**Lansing, Michigan**

# Opinion

Chief Justice:          Justices:

Robert P. Young, Jr.    Michael F. Cavanagh
                        Marilyn Kelly
                        Stephen J. Markman
                        Diane M. Hathaway
                        Mary Beth Kelly
                        Brian K. Zahra

FILED MAY 9, 2011

S T A T E   O F   M I C H I G A N

SUPREME COURT

GREAT WOLF LODGE OF TRAVERSE
CITY, LLC,

        Plaintiff-Appellee,

v                                         Nos. 139541 and
                                                139542

PUBLIC SERVICE
COMMISSION,

        Defendant-Appellant,

and

CHERRYLAND ELECTRIC
COOPERATIVE,

        Defendant-Appellee.

GREAT WOLF LODGE OF TRAVERSE
CITY, LLC,

        Plaintiff-Appellee,

v                                         Nos. 139544 and
                                                139545

PUBLIC SERVICE COMMISSION,

        Defendant-Appellee,

and

CHERRYLAND ELECTRIC
COOPERATIVE,

        Defendant-Appellant.

BEFORE THE ENTIRE BENCH

MARILYN KELLY, J.

This case requires us to resolve three issues. First, whether a utility's right of first entitlement to provide electrical service to "the entire electric load on the premises" of a "customer" ceases when the "customer" on the property changes.[1] Second, whether the Public Service Commission (PSC) is required to impose interest on a refund it awards when it determines that a utility has overcharged a consumer. Third, whether the PSC is required to impose a fine whenever a utility "neglects" to comply with one of its orders.[2]

We conclude that a utility's right of first entitlement set forth in Rule 460.3411 (Rule 411) of the Michigan Administrative Code extends to the entire premises initially served. And the right is not extinguished when a customer is no longer present on the premises. We also conclude that the PSC is not required to impose interest on a refund it awards to an overcharged utility consumer. Finally, we hold that the PSC is required to impose a fine pursuant to MCL 460.558 only when a utility "wilfully or knowingly"

_____

[1] Mich Admin Code, R 460.3411(11).

[2] MCL 460.558.

2

neglects to comply with a PSC order. Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the PSC.

## FACTS AND PROCEDURAL HISTORY

Plaintiff, Great Wolf Lodge of Traverse City, LLC, owns a water-park resort on 48 acres near Traverse City. The resort sits on part of a 120-acre parcel once farmed by the Oleson family. On July 14, 2000, plaintiff entered into an option agreement to buy a portion of the property from GDO Investments (GDO), which acquired it after Mr. Oleson's death.

Defendant Cherryland Electric Cooperative claims that it provided electricity to the Oleson property beginning in the 1940s. Cherryland ran an electric line, known as a "service drop," to the property. At one time or another over the years, Cherryland, Consumers Energy Company, and Traverse City Light & Power (TCLP) serviced farm buildings on the property.

After the last farming tenant vacated the premises in September 2001, the electricity was turned off. However, according to a GDO employee, GDO continued to pay a minimum monthly bill from Cherryland so that it had the option to have the electricity turned back on.

Later, when plaintiff was planning new construction on the property, it solicited bids for electric service from Cherryland, Consumers Energy, and TCLP. At that time, Cherryland did not claim that it had the sole right to provide electric service to the property. TCLP was the winning bidder, and in December 2001, plaintiff contracted with TCLP to provide electricity to its planned resort.

3

By January 2002, the farm buildings were scheduled to be demolished. GDO asked Cherryland to remove its service line so that the building it was attached to could be taken down. But Cherryland made it a condition for removing the service drop that it would be the electricity provider. Plaintiff claims that it agreed in order to keep the project on schedule. Thus, plaintiff asserts, Cherryland coerced it to rescind its contract with TCLP and contract with Cherryland to avoid construction delays, loss of revenue, or litigation.[3]

In May 2002, plaintiff entered into a three-year contract for electrical service with Cherryland. Under the contract's terms, Cherryland charged plaintiff $0.0496 a kilowatt-hour. This was the large resort service (LRS) rate set by the PSC. In February 2003, Cherryland applied to the PSC for formal approval to charge plaintiff the LRS rate.

This rate is available to consumers with a load factor greater than 50 percent and at least a 1500-kilowatt load. The application Cherryland signed recited these conditions. It also stated that, if plaintiff did not meet them, a different rate would apply. Shortly thereafter, in March 2003, plaintiff and Cherryland replaced their May 2002 contract with another that expressly provided for service at the LRS rate.

In July 2004, the PSC rejected Cherryland's application. It expressed concern that plaintiff was the only customer that Cherryland charged the LRS rate and questioned whether plaintiff's electrical needs were typical for a large resort. The PSC directed Cherryland to apply instead for a "special contract" to serve plaintiff. It also concluded

---

[3] TCLP later sued Cherryland for tortious interference with a contract and recovered $275,000. Plaintiff was not a party to that litigation.

that Cherryland had violated MCL 600.552 by implementing the LRS rate without PSC approval and fined Cherryland $10,000 pursuant to MCL 460.558. However, the PSC approved the LRS rate "for up to one year or until a special contract is approved."[4]

Plaintiff and Cherryland attempted to negotiate a special contract but were unable to reach an agreement. In August 2004, Cherryland filed an application with the PSC for approval of a special contract with plaintiff. The contract had not yet been agreed to, but Cherryland indicated that plaintiff was reviewing it. However, plaintiff intervened before the PSC and expressed concerns about the proposed special contract. According to plaintiff, it imposed unconscionable late charges and required plaintiff to forever bind itself to Cherryland. The PSC dismissed Cherryland's application in October 2004, indicating that it could be refiled once the parties reached an agreement. It also indicated that the parties could petition the PSC to resolve any disputes to the extent that the PSC had jurisdiction to hear those disputes.

In November 2004, Cherryland began unilaterally charging plaintiff for electricity at the large commercial and industrial (LCI) rate. Cherryland claimed that it made the change because plaintiff almost never used enough electricity to satisfy the minimum requirements of the LRS rate. Therefore, Cherryland feared that the PSC would again fine it for charging an improper rate.

In July 2005, plaintiff filed a two-count complaint against Cherryland in the PSC. Count I alleged that Cherryland had violated MCL 460.552 and the PSC's 2004 order by

---

[4] *In re Application of Cherryland Electric Coop*, order of the Public Service Commission, entered July 22, 2004 (Case No. U-13716), p 8.

charging plaintiff the LCI rate rather than the LRS rate. Plaintiff sought a refund of the amounts that it had paid in excess of the LRS rate. Finally, plaintiff asked that the PSC fine Cherryland for violating its order and require Cherryland to stop charging plaintiff the LCI rate and return to the LRS rate. In count II, plaintiff asked the PSC to declare that plaintiff could receive all components of its electrical service from any provider of its choosing. Plaintiff also asked the PSC to order Cherryland to transfer its distribution facilities to any new provider chosen by plaintiff and to remove any unnecessary facilities on its property.

Cherryland moved for summary disposition. A hearing referee ruled for plaintiff on count I and for Cherryland on count II. The referee concluded that Cherryland's conduct was a "purposeful and flagrant violation" of the PSC's 2004 order. He determined that plaintiff was entitled to a refund of $72,550.16 plus interest and recommended that Cherryland be fined $44,250. Regarding count II, he agreed that plaintiff could choose its electric supplier, but added that no authority permitted plaintiff a full choice of providers for all components of its electric service.

The PSC agreed that plaintiff was entitled to summary disposition on count I and with the amount of the refund to which it was entitled. However, the PSC declined to impose a fine or interest on Cherryland. Although the PSC concluded that Cherryland "should have sought clarification" of its 2004 order, it stated that "Cherryland's interpretation of the July 22 order was not so clearly unreasonable as to justify the

6

imposition of a fine or interest on the refund to [plaintiff]."[5]  Finally, the PSC agreed with the hearing referee that count II should be dismissed.

The circuit court affirmed the PSC's order in large part.  It concluded that plaintiff was an existing customer of Cherryland under Rule 411 because the property (the Oleson farm) was the customer, not the entity that owned the property.  Therefore, Cherryland had the right to continue providing electric service to the property.  However, the circuit court reversed the decision not to impose a fine and interest on Cherryland.  It ruled that the language of the PSC's 2004 order was clear and unambiguous and concluded, contrary to the PSC, that Cherryland's misinterpretation of the order was clearly unreasonable.

Plaintiff and the PSC both appealed.  The Court of Appeals consolidated the appeals and, in a published opinion, affirmed in part, reversed in part, and remanded to the PSC for further proceedings.[6]  The Court of Appeals affirmed the circuit court's ruling that the PSC was required to impose a fine and interest on Cherryland.  However, the Court of Appeals concluded that plaintiff was free to choose its electric distributor if there was no customer governed by the restrictions of Rule 411.  It held that the plain language of Rule 411(1)(a) defined "customer" as the "buildings and facilities served" by an electricity provider.  The panel reasoned as follows:

---

[5] *In re Complaint of Great Wolf Lodge of Traverse City, LLC, Against Cherryland Electric Coop*, order of the Public Service Commission, entered May 25, 2006 (Case No. U-14593), p 15.

[6] *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 285 Mich App 26; 775 NW2d 597 (2009).

7

If the changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site, . . . those changes and that interruption did not create a new customer. If, however, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customer or customers on the site, thus severing the utility-customer relationship.[7]

The panel concluded that the record was insufficient to determine whether there was an existing customer and remanded the case to the PSC for further factual development, findings, and conclusions. It also directed the PSC to consider whether a "customer[]" was "already receiving service" pursuant to MCL 124.3 when plaintiff acquired the property. If so, MCL 124.3(2) would prohibit TCLP, a municipal electricity provider not regulated by the PSC and not subject to Rule 411, from contracting with plaintiff to provide electric service.[8]

Cherryland and the PSC appealed in this Court. We granted the parties' applications for leave to appeal.[9]

---

[7] *Id*. at 40.

[8] MCL 124.3(2) provides that "[a] municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing."

[9] *Great Wolf Lodge of Traverse City, LLC v Pub Serv Comm*, 486 Mich 869 (2010).

STANDARD OF REVIEW

A court reviewing an administrative agency's interpretation of a statute should give the agency's interpretation "respectful consideration" and, if it is persuasive, should not overrule it without "cogent reasons."[10] We have held that "[i]n construing administrative rules, courts apply principles of statutory construction."[11] All rates, fares, charges, classification and joint rates, regulations, practices, and services prescribed by the PSC are presumed, prima facie, to be lawful and reasonable.[12] A final order of the PSC must be authorized by law and, if a hearing is required, supported by competent, material, and substantial evidence on the whole record.[13] A party aggrieved by a PSC order must show by clear and satisfactory evidence that the PSC's order is unlawful or unreasonable.[14]

CHERRYLAND'S RIGHT OF FIRST ENTITLEMENT UNDER RULE 411(11)

The PSC adopted Rule 411 in 1982 as part of a comprehensive regulatory scheme for electric utilities. At that time, it stated that the purpose of Rule 411 was "to avoid

---

[10] *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008).

[11] *Detroit Base Coalition for Human Rights of the Handicapped v Dep't of Social Servs*, 431 Mich 172, 185; 428 NW2d 335 (1988), citing *Gen Motors Corp v Bureau of Safety & Regulation*, 133 Mich App 284; 349 NW2d 157 (1984).

[12] MCL 462.25; see also *Mich Consol Gas Co v Pub Serv Comm*, 389 Mich 624, 635-636; 209 NW2d 210 (1973).

[13] Const 1963, art 6, § 28.

[14] MCL 462.26(8).

unnecessary and costly duplication of facilities and to provide objective standards for extension of electric service . . . ."[15]

The PSC argues that its decisions interpreting Rule 411 clearly establish that "once a first utility entitlement is established, a subsequent change in ownership does not create a new prospective customer on the old premises."[16] In effect, the PSC's interpretation of Rule 411(11) gives the first-serving utility a right in perpetuity to serve the property on which a customer is located.

Rule 411(11) provides that "[t]he first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer even if another utility is closer to a portion of the customer's load."[17] Rule 411(1)(a) defines "customer" as "the buildings and facilities served rather than the individual, association, partnership, or corporation served."[18] Rule 102(f) defines "premises" as "an undivided piece of land which is not separated by public roads, streets, or alleys."[19]

When those definitions are incorporated into Rule 411(11), it reads as follows:

> The first utility serving [buildings and facilities] pursuant to these rules is entitled to serve the entire electric load on the [undivided piece of land which is not separated by public roads, streets, or alleys] of [those

---

[15] *In re Regulations Governing Service Supplied by Electric Utilities*, order of the Public Service Commission, entered July 13, 1982 (Case No. U-6400), p 10.

[16] *In re Complaint of Indiana Mich Power Co Against Midwest Energy Co*, order of the Public Service Commission, entered June 7, 2005 (Case No. U-14193), p 19.

[17] Mich Admin Code, R 460.3411(11).

[18] Mich Admin Code, R 460.3411(1)(a).

[19] Mich Admin Code, R 460.3102(f).

10

buildings and facilities] even if another utility is closer to a portion of the [buildings and facilities'] load.

Thus, Rule 411(11) grants the utility first serving buildings or facilities on an undivided piece of real property the right to serve the entire electric load on that property. The right attaches at the moment the first utility serves "a customer" and applies to the entire "premises" on which those buildings and facilities sit. The later destruction of all buildings on the property or division of the property by a public road, street, or alley does not extinguish or otherwise limit the right. This conclusion is consistent with the rule's purpose of avoiding unnecessary duplication of electrical facilities.[20]

Plaintiff argues that this right of first entitlement lasts only as long as an "existing customer" is being served. We disagree. If Rule 411(11) were intended to be read as plaintiff argues, it could simply have stated that "[t]he first utility serving a customer pursuant to these rules is entitled to serve the entire electric load of that customer." However, Rule 411(11) explicitly ties the right of entitlement to the premises, not to the customer. Notably, nothing in Rule 411 or elsewhere in the PSC rules indicates that this

---

[20] The dissent's citation of Rule 411(14) does not aid its argument. First, the purpose behind Rule 411(11) does not "influence [our] interpretation" of the rule. *Post* at 11 n 2. We simply observe that our interpretation of the rule's language is also consistent with that purpose. Rule 411(14) does nothing to undercut our interpretation.

Second, Rule 411(14) is an irrelevant distraction from the issue presented in this case. Both this opinion and the dissent decide this case on the basis of our interpretation of the language in Rule 411(11). The dissent does not even attempt to argue that Rule 411(14) provides any additional support for its interpretation.

11

right of first entitlement terminates if the initial customer, the initial "buildings and facilities served," changes.[21]

For this reason, contrary to the dissent's contention, our reading of the rule does not redefine "customer" as "premises." Both this opinion and the dissent give the same effect to the word "customer" in Rule 411(11). We agree that to trigger the right of first entitlement, there must first be a "customer" served by the utility. We further agree that the "premises of that customer" dictate the scope of the utility's right.[22]

Plaintiff argues that Rule 411(2) undercuts our interpretation because it refers to "*existing* customers." However, Rule 411(2) states simply that "[e]xisting customers shall not transfer from one utility to another."[23] Hence, it establishes nothing more than that existing "buildings and facilities" cannot transfer from one utility to another. It does

---

[21] Thus, the dissent's statement that "if there are no buildings or facilities being served, there is no 'customer,'" *post* at 8, is correct, but irrelevant.

[22] Our disagreement with the dissent appears when the scope of this right is fully defined. The dissent does not view the parameters of the right of first entitlement in Rule 411(11) as firmly established when the utility first serves a customer. Instead, it is an undefined right that a property owner is free to vitiate at any time by tearing down all of the "customers" on the property. Similarly, a later-constructed road dividing the property in two would create a new "premises," hence a new "customer," if there were no buildings being served on the newly defined "premises." This approach leaves the utility's right of first entitlement undefined, wholly outside the control of the utility and the PSC, and subject to unilateral abrogation by property owners. This result would be contrary to the purpose of keeping "[t]he electric transmission and distribution businesses . . . under a regulated monopoly utility structure." See Public Service Commission, *The Commission had its historic beginnings over 130 years ago* <http://www.michigan.gov/mpsc/0,1607,7 -159-16400-40512--,00.html> (accessed May 9, 2011) (describing the history of the PSC).

[23] Mich Admin Code, R 460.3411(2).

12

not advance plaintiff's argument that eliminating a customer cuts off the right in Rule 411(11) to serve the "entire electric load on the premises" of the initial customer.

In this case, is it undisputed that Cherryland was the first utility to provide electric service to buildings and facilities on the Oleson farm. Once Cherryland did so, Rule 411(11) gave it the right to serve the entire electric load on the premises. That right was unaffected by subsequent changes in the "customer," because the right extends to the "premises" of the "buildings and facilities" that existed at the time service was established. Later destruction of the buildings and facilities on the property did not extinguish that right.[24]

Given that Cherryland is entitled to the benefit of the first entitlement in Rule 411(11), it is irrelevant that TCLP is a municipal corporation not subject to PSC regulation. Rule 411(11) both grants and limits rights. It grants a right of first entitlement to Cherryland while limiting the right of the owner of the premises to contract with another provider for electric service. Plaintiff put that limitation directly at issue by seeking a declaratory ruling that it is free to contract for electric service with any electricity provider. Assuming arguendo that MCL 124.3 does not restrict TCLP from contracting with plaintiff to provide electric service, Rule 411(11) restricts plaintiff from seeking that service from any entity other than Cherryland. Plaintiff may not circumvent the limitation of Rule 411(11) by attempting to receive service from a municipal

---

[24] We note that a utility may waive this right "if another utility is willing and able to provide the required service and if the [PSC] is notified and has no objections." Mich Admin Code, R 460.3411(12).

13

corporation not subject to PSC regulation. Thus, MCL 124.3 has no application to the instant dispute.

In sum, the PSC's determination that Cherryland had the right to serve the entire premises was authorized by law and supported by competent, material, and substantial evidence. Plaintiff has failed to demonstrate that the PSC's May 2006 order was unlawful or unreasonable.

THE PSC IS NOT REQUIRED TO IMPOSE INTEREST ON A REFUND

The PSC's authority to award interest in addition to a refund under these circumstances is not explicitly authorized by statute. Rather, it has its genesis in the Court of Appeals' decision in *Detroit Edison Co v Pub Serv Comm*.[25] In that case, the Court of Appeals held that the PSC's authority to award interest derives from MCL 460.6(1). MCL 460.6(1) vests the PSC with the power and jurisdiction, among other things, to "regulate all rates, fares, fees, charges, services, rules, conditions of service, and all other matters pertaining to the formation, operation, or direction of public utilities." Because "[t]he selected rate of interest has a direct impact on the fees and charges that a utility's customers ultimately pay for service,"[26] the Court of Appeals concluded that the PSC had authority to determine the amount of interest to award.

However, plaintiff has cited no authority for the proposition that the PSC *must* award interest when it grants a refund in these circumstances.[27] Rather, *Detroit Edison*

[25] *Detroit Edison Co v Pub Serv Comm*, 155 Mich App 461; 400 NW2d 644 (1986).

[26] *Id*. at 469.

[27] Significantly, the Legislature has made interest awards mandatory under other circumstances involving the PSC. See, e.g., MCL 460.6j(16) (stating that if the PSC

14

makes clear that the PSC has broad discretion when determining the amount of interest to award.[28] Therefore, plaintiff cannot demonstrate that the PSC's decision not to impose interest on the refund in this case was unlawful.

Nor has plaintiff demonstrated that the PSC's failure to award interest was "unreasonable." We have defined "unreasonable" as "arbitrary, capricious or totally unsupported by admissible and admitted evidence."[29] The PSC declined to impose interest on the refund to plaintiff because it concluded that Cherryland reasonably misconstrued its July 2004 order. This conclusion was not arbitrary or capricious because evidence on the record supported the PSC's conclusion that Cherryland's interpretation of the order was not clearly unreasonable.

Cherryland's application for approval of the LRS rate noted that the rate is available only to customers with a load factor greater than 50 percent and at least a 1500-kilowatt load. Plaintiff met these requirements only in August 2003 and July 2005. Moreover, the PSC had previously fined Cherryland for charging plaintiff an unapproved

---

orders "refunds or credits" to customers in orders involving "a power supply cost reconciliation," the refunds, credits, or additional charges "*shall* include interest") (emphasis added).

[28] *Detroit Edison*, 155 Mich App at 470-471 ("[T]here is no reason why the interest element of the guarantee needs or ought to be determined by the circuit court as part of its equitable powers. The circuit court's equitable powers arise from situations where there is probable cause to believe that a party is threatened with irreparable injury. . . . The method of establishing an interest rate simply does not present a situation of a comparable nature. Moreover, this complex subject is one in which the Commission has superior expertise.").

[29] *Associated Truck Lines, Inc v Pub Serv Comm*, 377 Mich 259, 279; 140 NW2d 515 (1966).

15

rate. Taken together, this evidence supported the PSC's determination. It was not clearly unreasonable for Cherryland to change the rate charged to plaintiff because plaintiff had not complied with the load requirements for the LRS rate.

## MCL 460.558 REQUIRES THAT A FINE BE IMPOSED WHEN A UTILITY FAILS OR NEGLECTS TO COMPLY "WILFULLY OR KNOWINGLY"

MCL 460.558 states:

> Every corporation, its officers, agents and employes, and all persons and firms engaged in the business of furnishing electricity as aforesaid shall obey and comply with every lawful order made by the commission under the authority of this act so long as the same shall remain in force. *Any corporation or person engaged in such business or any officer, agent, or employe thereof, who wilfully or knowingly fails or neglects to obey or comply with such order or any provision of this act shall forfeit to the state of Michigan not to exceed the sum of 300 dollars for each offense*. Every distinct violation of any such order or of this act, shall be a separate offense, and in case of a continued violation, each day shall be deemed a separate offense. An action to recover such forfeiture may be brought in any court of competent jurisdiction in this state in the name of the people of the state of Michigan, and all moneys recovered in any such action, together with the costs thereof, shall be paid into the state treasury to the credit of the general fund.[30]

The Court of Appeals reasoned that MCL 460.558 does not apply solely in cases of "wilful or knowing failure to comply with a lawful PSC order; it also applies in the event of negligent noncompliance."[31] We disagree. Under the Court of Appeals' construction, MCL 460.558 would require that a fine be imposed any time a utility or its agent fails to comply with a PSC order. If that construction were what the Legislature intended in enacting MCL 460.558, there would have been no need to include the

---

[30] Emphasis added.

[31] *Great Wolf Lodge*, 285 Mich App at 47.

16

modifiers "wilfully or knowingly." Rather, the Legislature could simply have mandated a fine in cases in which a party "fails or neglects" to obey a PSC order.

"Wilfully" and "knowingly" are adverbs, which generally modify verbs. The most natural reading of MCL 460.558 is that these terms are intended to modify both verbs immediately following them and separated by the disjunctive "or."[32]

The record here indicates that the PSC determined that Cherryland made a mistake by unilaterally imposing the LCI rate. The PSC concluded that Cherryland should instead have sought clarification of its July 2004 order. It was not unlawful or unreasonable to conclude that Cherryland did not willfully or knowingly fail or willfully or knowingly neglect to obey or comply with the PSC's July 2004 order. Hence, MCL 460.558 did not require the PSC to impose a fine on Cherryland.

CONCLUSION

We hold that a utility's right of first entitlement under Mich Admin Code, R 460.3411(11) entails the right to serve the entire premises. That right is not extinguished when there is a new customer, i.e., new "buildings and facilities served," on the premises. We also hold that, absent a statutory mandate to do so, the PSC need not impose interest when it awards a refund to a party. Finally, we hold that the PSC is required to impose a fine pursuant to MCL 460.558 only when a utility willfully or knowingly neglects to

---

[32] See generally *Porto Rico Railway, Light & Power Co v Mor*, 253 US 345, 348; 40 S Ct 516; 64 L Ed 944 (1920) ("When several words are followed by a clause which is applicable as much to the first and other words as to the last, the natural construction of the language demands that the clause be read as applicable to all.").

comply with its order.  Therefore, we reverse the judgment of the Court of Appeals and reinstate the decision of the PSC.

Marilyn Kelly
Robert P. Young, Jr.
Michael F. Cavanagh
Mary Beth Kelly

STATE OF MICHIGAN

SUPREME COURT


GREAT WOLF LODGE OF TRAVERSE
CITY, LLC,

        Plaintiff-Appellee,

v

PUBLIC SERVICE
COMMISSION,

        Defendant-Appellant,

and

CHERRYLAND ELECTRIC
COOPERATIVE,

        Defendant-Appellee.

Nos. 139541 and
139542

_____

GREAT WOLF LODGE OF TRAVERSE
CITY, LLC,

        Plaintiff-Appellee,

v

PUBLIC SERVICE COMMISSION,

        Defendant-Appellee,

and

CHERRYLAND ELECTRIC
COOPERATIVE,

        Defendant-Appellant.

Nos. 139544 and
139545

_____

MARKMAN, J. (*concurring in part and dissenting in part*).

Although I concur in the majority's holdings that the Public Service Commission (PSC) was not required to include interest on the refund it ordered Cherryland Electric Cooperative to pay and that the PSC was not required to impose a fine on Cherryland, I respectfully dissent from the majority's holding that the right of Cherryland to provide electrical service to the property at issue was not extinguished when all the buildings on the property were demolished. Instead, I conclude that, pursuant to Mich Admin Code, R 460.3411 (Rule 411), once all the buildings on the subject property had been demolished, Cherryland no longer had any "customer" on the property, and, thus, its "entitle[ment] to serve the entire electric load on the premises of that customer" was extinguished. Accordingly, I would reverse the Court of Appeals' judgment regarding the imposition of interest and a fine, vacate the remainder of the Court of Appeals' decision, and remand to the trial court for it to address the argument of Great Wolf Lodge of Traverse City, LLC, that it should not now be considered a Cherryland "customer," even though Cherryland is currently serving Great Wolf Lodge, because Cherryland had coerced Great Wolf Lodge into becoming its "customer."

## I. STANDARD OF REVIEW

MCL 462.26(8) provides, "In all appeals under this section the burden of proof shall be upon the appellant to show by clear and satisfactory evidence that the order of the commission complained of is unlawful or unreasonable." To declare a PSC order unlawful, "'there must be a showing that the commission failed to follow some mandatory provision of the statute or was guilty of an abuse of discretion in the exercise of its judgment.'" *In re MCI Telecom Complaint*, 460 Mich 396, 427; 596 NW2d 164

2

(1999), quoting *Giaras v Mich Pub Serv Comm*, 301 Mich 262, 269; 3 NW2d 268 (1942).

"The hurdle of unreasonableness is equally high.  Within the confines of its jurisdiction,

there is a broad range or 'zone' of reasonableness within which the [PSC] may operate."

*In re MCI Telecom Complaint*, 460 Mich at 427, citing *Mich Bell Tel Co v Pub Serv*

*Comm*, 332 Mich 7, 26-27; 50 NW2d 826 (1952).  In addition,

> [w]hen considering an agency's statutory construction, the primary question presented is whether the interpretation is consistent with or contrary to the plain language of the statute.  While a court must consider an agency's interpretation, the court's ultimate concern is a proper construction of the plain language of the statute.
>
> . . . As established in [*Boyer-Campbell Co v Fry*, 271 Mich 282; 260 NW 165 (1935)], the agency's interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons. . . .   But, in the end, the agency's interpretation cannot conflict with the plain meaning of the statute.  [*In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 108; 754 NW2d 259 (2008).]

"In construing administrative rules, courts apply principles of statutory construction."

*Detroit Base Coalition for the Human Rights of the Handicapped v Dep't of Social Servs*,

431 Mich 172, 185; 428 NW2d 335 (1988).

## II.  ANALYSIS

### A.  RIGHT TO SERVE

Rule 411(2) states that "[e]xisting customers shall not transfer from one utility to

another."  Mich Admin Code, R 460.3411(2).  Rule 411(11) provides that the "first utility

serving a customer pursuant to these rules is entitled to serve the entire electric load on

the premises of that customer even if another utility is closer to a portion of the

customer's load."   Mich Admin Code, R 460.3411(11).   Rule 411(1)(a) defines

"customer" as "the buildings and facilities served rather than the individual, association,

3

partnership, or corporation served." Mich Admin Code, R 460.3411(1)(a). And Mich Admin Code, R 460.3102(j) defines "premises" as "an undivided piece of land that is not separated by public roads, streets, or alleys."

In *In re Complaint of Consumers Energy Co*, 255 Mich App 496; 660 NW2d 785 (2003), the subject property was purchased by Meijer, Inc., in August 1999. Consumers Energy Company provided electric service to the property from the 1940s until November 1999, when all the buildings on the property were demolished so that Meijer could build a store and gas station. After Great Lakes Energy Cooperative began providing Meijer with electric service, Consumers filed a formal complaint against Great Lakes, alleging that the latter had violated Rule 411. Consumers argued that because it had continuously served the property and had never relinquished or abandoned its entitlement to do so, it was the "first utility" with respect to the property and, thus, was entitled to serve the entire electric load on the premises. The PSC rejected this argument and held that Meijer was not an "existing customer" of Consumers and, thus, was not obligated to receive its electric service from Consumers. However, the Court of Appeals reversed the PSC and held that Meijer was, in fact, an "existing customer" and, thus, that "Consumers [was] entitled to serve the entire electric load on Meijer's property." *Id.* at 504.

The Court of Appeals reached this conclusion by focusing on the fact that "a mere change in ownership does not allow the customer to transfer to another utility," *id.* at 503, because the "customer" is not "the individual, association, partnership, or corporation taking service," *id.* at 502, citing Rule 411(1)(a). The problem with the Court of Appeals' opinion in *Consumers Energy*, however, is that, although it correctly recognized

4

that the "customer" is not "the individual, association, partnership, or corporation served," it failed to recognize that the "customer" is also not the property being served. Mich Admin Code, R 460.3411(1)(a). Instead, the "customer" consists of the "buildings and facilities served." *Id.* Therefore, when all the buildings on a piece of property have been demolished, the utility no longer has an "existing customer" on the property to serve. That is, although a change in ownership does not by itself enable the new owner to transfer to another utility, the destruction of all the buildings on a piece of property *does* enable the new owner to do so, because that destruction is the equivalent of the destruction of all the "existing customers." And there are no rules or statutes that require a new "customer" to use the same electrical provider as the former "customer"; instead, the regulatory scheme provides merely that the *same* "customer," as defined by the "buildings and facilities served," must use the same electrical provider. Therefore, I believe the PSC correctly ruled in *Consumers Energy* that Consumers was not entitled to serve Meijer's new store and gas station, and that the Court of Appeals erred by reversing that decision.

The Court of Appeals in the instant case, being bound by *Consumers Energy* but apparently unconvinced by its analysis, sought to distinguish the two cases. It did this by focusing on language in *Consumers Energy*, 255 Mich App at 503, that emphasized that "the discontinuation of service was directly related to the change in ownership . . . ." It interpreted this language as "leav[ing] open the possibility that a discontinuation of service, and demolition of buildings coming about for reasons other than direct furtherance of a plan to change ownership or land uses, can indeed extinguish an existing

5

customer." *Great Wolf Lodge of Traverse City*, *LLC v Pub Serv Comm*, 285 Mich App

26, 38; 775 NW2d 597 (2009). That is, it interpreted *Consumers Energy*

> as indicating that where service to buildings or facilities is interrupted, or buildings are demolished or facilities are removed, in direct connection with a change of ownership or land use, neither the service interruption nor the replacement of old buildings and facilities with new ones creates a new customer. To avoid interpreting that case, or the definition of "existing customer," as locking an incumbent utility into that status for a given parcel in perpetuity if it so chooses, with no regard for periods of interruption in service or elimination of buildings and facilities, it is necessary to recognize that some such interruption or elimination would indeed work an end to the utility-customer relationship. [*Id.* at 39-40.]

Accordingly, it held that

> [i]f the changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership and plan for the site, then under [*Consumers Energy*], those changes and that interruption did not create a new customer. If, however, the previous owner held on to the site for a significant period after all land uses requiring electricity had been abandoned, requested that electric service be terminated, and demolished buildings or removed facilities, or at least allowed them to stand without electricity, for reasons other than anticipation of an immediate change of ownership or land use, then those actions should be deemed to have extinguished the previously existing customer or customers on the site, thus severing the utility-customer relationship. [*Id.* at 40.][1]

---

[1] Because the Court of Appeals could not determine from the record whether the discontinuation of service was directly related to the change in ownership, it remanded this case to the PSC "for full factual development, findings, and conclusions in this regard." *Great Wolf Lodge*, 285 Mich App at 41. It also

> vacate[d] the [PSC's] holding, and the circuit court's affirmance, that Cherryland is entitled to continue serving Great Wolf [Lodge]; clarif[ied] that for purposes of Rule 411, "customer" means buildings and facilities, not the land on which they once stood; [and] declare[d] that a significant interruption of service to buildings or facilities can extinguish the existence of an existing customer in some situations[.] [*Id.*]

The problem, of course, is that this distinction is nowhere to be found or implied in Rule 411. In my judgment, the Court of Appeals here was attempting to effect a compromise between the actual language of Rule 411 and *Consumers Energy*. The Court of Appeals apparently recognized that Rule 411 defines "customer" as "the buildings and facilities served," rather than the parcel of land served. As it explained:

> If Rule 411(1)(a) calls for carefully distinguishing between individuals, associations, partnerships, or corporations taking service from the buildings and facilities served, with only the latter two constituting a "customer," it also demands distinguishing buildings and facilities served from the parcels served. The rule providing the definition could easily have stated that the customer was the parcel, but instead specified buildings and facilities. It follows, then, that where there are no buildings or facilities being served, there is no customer. [*Great Wolf Lodge*, 285 Mich App at 39.]

However, the Court of Appeals was nevertheless bound to follow *Consumers Energy*, which held that "for purposes of Rule 411, a change of ownership and demolition of all buildings served did not create a new customer." *Id.* at 38. As a result, the Court of Appeals attempted to reconcile Rule 411 and *Consumers Energy* by holding that sometimes, as in *Consumers Energy*, a change of ownership and demolition of all buildings served *does not* create a new "customer," while sometimes, as perhaps in the instant case, a change of ownership and demolition of all buildings served *does* create a new "customer." Because this Court is not bound to follow *Consumers Energy*, I would hold that *Consumers Energy* was wrongly decided because it is inconsistent with Rule 411, which defines "customer" as "the buildings and facilities served" rather than the parcel of land served.

7

I agree with the Court of Appeals that the "customer" consists of "the buildings and facilities served"; the "customer" for purposes of the present dispute is neither the owner of the property nor the parcel of land. Therefore, "where there are no buildings or facilities being served, there is no customer." *Great Wolf Lodge*, 285 Mich App at 39. However, I do not believe that it matters whether the "changes in buildings and facilities and interruption of service came about in reasonable proximity to and for the purpose of a change in ownership . . . ." *Id.* at 40. Instead, I believe that if there are no buildings or facilities being served, there is no "customer," regardless of why there are no buildings or facilities being served or when this came about. In *Consumers Energy*, once all the buildings on the property had been demolished, Consumers no longer had any "customers" on the property and therefore was no longer entitled, under Rule 411, to serve Meijer's newly constructed store and gas station.

The same is true here. Once all the buildings on the property had been demolished, Cherryland no longer had any "customers" on the property and, therefore, was not entitled to serve Great Wolf Lodge's newly constructed water-park resort. Rule 411(2) provides, "Existing customers shall not transfer from one utility to another." Mich Admin Code, R 460.3411(2). Because Rule 411(1)(a) defines "customer" to mean "the buildings . . . served," Mich Admin Code, R 460.3411(1)(a), it communicates by extrapolation that "[e]xisting [buildings served] shall not transfer from one utility to another." In this case, once all the buildings had been demolished, Cherryland no longer had any "existing customer" on the property that was prohibited from transferring from one utility to another.

8

In addition, Rule 411(11) provides, "The first utility serving a customer pursuant to these rules is entitled to serve the entire electric load on the premises of that customer . . . ." Mich Admin Code, R 460.3411(11). Because Mich Admin Code, R 460.3411(1)(a) defines "customer" to mean "the buildings . . . served," and Mich Admin Code, R 460.3102(j) defines "premises" to mean "an undivided piece of land that is not separated by public roads, streets, or alleys," Rule 411(11) by extrapolation communicates, "The first utility serving a [building] pursuant to these rules is entitled to serve the entire electric load on the [undivided piece of land] of that [building] . . . ." In this case, once all the buildings on the property had been demolished, there was no "utility serving a building," and, therefore, no utility, including Cherryland, was "entitled to serve the entire electric load on the undivided piece of land of that [nonexisting] building." And the new "customer," i.e., Great Wolf Lodge's newly constructed water-park resort, was not obligated under any provision of law to obtain its electric service from the previous customer's electric service provider.

The majority holds that a utility's "right to serve the entire electric load on the premises" of a "customer" is "unaffected by subsequent changes in the 'customer[.]'" *Ante* at 13. I do not necessarily disagree with this statement. For example, if Electric Company XYZ served a house on the subject property, Electric Company XYZ would be entitled to serve a subsequently built barn on the same property because, pursuant to Rule 411(11), a utility is "entitled to serve the entire electric load on the premises of that customer . . . ." This right is not affected when the "customer" *changes* from being only the house to being both the house and the barn. However, what the majority fails to recognize is that because "customer" is defined as "the buildings . . . served," Mich

9

Admin Code, R 460.3411(1)(a), if there are no buildings on the property, there are no "customers" on the property. And if there are no "customers" on the property, there is no longer any "first [or second or third] utility serving a customer [that] is entitled to serve the entire electric load on the premises of that customer . . . ." Mich Admin Code, R 460.3411(11). That is, the majority overlooks what I view as the dispositive difference between a "customer" *changing* and a "customer" being *eliminated*.

The majority focuses on the fact that Rule 411(11) states that the utility is "entitled to serve the entire electric load on the *premises* of that customer . . . ." (Emphasis added.) However, in doing so, the majority loses sight of the fact that in order for there to be a right to serve the entire "premises," the utility has to first be serving some "customer" on the "premises." In this case, once all the buildings on the property had been demolished, Cherryland was no longer serving *any* "customers" on the property and, therefore, no longer possessed any right to serve the entire "premises." That is, it was no longer "entitled to serve the entire electric load on the premises of that [nonexisting] customer." Mich Admin Code, R 460.3411(11). The fact that there is *now* a new "customer," i.e., building, on the property does not change this result because there are no rules or statutes that require a new "customer" to be served by the same electric utility that served the previous "customer" on the same piece of property.[2]

---

[2] The majority suggests that this interpretation is inconsistent with the rule's "purpose of avoiding unnecessary duplication of electrical facilities" because when a piece of property is subdivided, new "customers" that would be free to contract with different utility companies would be created. *Ante* at 11-12 & n 22. However, the majority fails to apprehend the significance of Rule 411(14). This rule provides, "Regardless of other provisions of this rule, . . . a utility shall not extend service to a new customer in a manner that will duplicate the existing electric distribution facilities of another utility,

10

The majority essentially relies on the use of the term "premises" in Rule 411(11) to redefine "customer" to mean "premises." The majority holds that a utility has a right to serve the entire "premises" of a "customer," even after that "customer" ceases to exist. The only way to reach this conclusion is to redefine "customer" to mean "premises." However, Rule 411(1)(a) clearly defines "customer" to mean "the buildings . . . served[.]" The majority suggests that it must read "premises" in the way that it does in order to give the word some meaning. However, that is not the case because, although "premises" may not have the meaning that the majority ascribes to it, it does have a meaning of alternative significance: it means that the first utility serving a "customer" on a piece of property is entitled to serve all the "customers" on that property. As the Court of Appeals explained, "Rule 411(11) concerns extensions of service on premises already being served, and guards against any single premises being served by multiple utilities." *Great Wolf Lodge*, 285 Mich App at 36. Without the phrase "on the premises" in Rule 411(11), this very considerable protection for utilities would not exist. Therefore, "premises" need not be misconstrued in order to give it substantive meaning.

---

except where both utilities are within 300 feet of the prospective customer." Mich Admin Code, R 460.3411(4). Therefore, the majority's concerns about the duplication of electrical facilities when property is subdivided need not influence its interpretation of Rule 411(11). Contrary to the majority's contention, Rule 411(14) is not an "irrelevant distraction." *Ante* at 11 n 20. Indeed, given that the majority believes that it is important enough to point out that its interpretation of Rule 411(11) is "consistent with the rule's purpose of avoiding unnecessary duplication of electrical facilities," *ante* at 11, I believe that it is equally relevant to point out that, regardless of Rule 411(11), Rule 411(14) clearly serves the same purpose.

Although an "agency's interpretation is entitled to respectful consideration and, if persuasive, should not be overruled without cogent reasons," *Rovas Complaint*, 482 Mich at 108, it must not be forgotten that in *Consumers Energy*, when all the buildings that Consumers Energy had served had been demolished by Meijer, the PSC concluded that Meijer did not constitute an "existing customer" of Consumers, and the Court of Appeals reversed. Therefore, the PSC's decision here that Great Wolf Lodge is an "existing customer" of Cherryland may well have been a result of the Court of Appeals' interpretation of Rule 411 in *Consumers Energy*, rather than the PSC's own interpretation of the rule. Furthermore, even assuming that the PSC's decision was based on its own interpretation of Rule 411, for the reasons discussed earlier, that interpretation is not persuasive and there are, in fact, "cogent" reasons to overrule it. Great Wolf Lodge, in my judgment, has fully met its burden of showing by clear and satisfactory evidence that the PSC's decision was inconsistent with the law.

However, there is no dispute that Cherryland is currently rendering electric service to Great Wolf Lodge. Great Wolf Lodge has consistently argued that this should not prevent it from transferring to another utility because the only reason Cherryland is serving Great Wolf Lodge is that Cherryland refused to remove its service drop so that the buildings could be demolished and the water-park resort could be built. Great Wolf Lodge raised this issue before the PSC, the trial court, the Court of Appeals, and this Court. The PSC summarized Great Wolf Lodge's argument as follows: Great Wolf Lodge "had a choice of electric service providers in 2001" and "because that choice was thwarted by Cherryland's refusal to remove the service drop, the [PSC] should now declare that [Great Wolf Lodge] has full choice in transmission and distribution

12

services." The PSC rejected this argument, stating that Great Wolf Lodge "has not cited any legal authority as a basis for the [PSC] to grant the relief sought under the circumstances of this case." However, neither the trial court nor the Court of Appeals addressed this issue. Therefore, I would remand this case to the trial court for it to be addressed.[3]

## B. INTEREST

I agree with the majority that the PSC was not required to award interest on the refund it ordered Cherryland to pay. Although *Detroit Edison Co v Pub Serv Comm,* 155 Mich App 461, 469; 400 NW2d 644 (1986), held that the PSC possesses the *authority* to award interest on refunds, it did not *require* the PSC to award interest. Because no statute, rule, or caselaw requires the PSC to award interest on refunds, Great Wolf Lodge has not satisfied its burden of showing by clear and satisfactory evidence that the PSC's decision to not award interest was unlawful or unreasonable. See MCL 462.26(8).

---

[3] To the extent that Great Wolf Lodge argues that it should be allowed to obtain service from Traverse City Light & Power (TCLP), a municipal corporation not subject to PSC regulation, MCL 124.3(2) is applicable. MCL 124.3(2) provides, "A municipal corporation shall not render electric delivery service for heat, power, or light to customers outside its corporate limits already receiving the service from another utility unless the serving utility consents in writing." MCL 460.10y(2), like Rule 411(1)(a), defines "customer" as "the building or facilities served . . . ." In this case, once all the buildings on the property had been demolished, there were no "customers . . . already receiving [electric] service from another utility," and, thus, at that point, MCL 124.3(2) would not have prevented Great Wolf Lodge from obtaining service from TCLP. However, whether the fact that the water-park resort is now receiving electric service from Cherryland prevents the resort from obtaining service from TCLP instead is a question that the trial court should address on remand.

## C. FINE

I also agree with the majority that the PSC was not required to impose a fine on Cherryland. MCL 460.558 provides that "[a]ny corporation . . . [that] wilfully or knowingly fails or neglects to obey or comply with [a PSC] order or any provision of this act [1909 PA 106; MCL 460.551 *et seq.*] shall forfeit to the state of Michigan not to exceed the sum of 300 dollars for each offense." Contrary to the Court of Appeals' conclusion, this language does not encompass mere negligent non-compliance; otherwise, there would have been no need to include the language "wilfully or knowingly" within this statute. "Wilfully or knowingly" modifies both "fails" and "neglects," and, therefore, the PSC is required to impose a fine only where a utility "wilfully or knowingly" "fails," or "wilfully or knowingly" "neglects," to "obey or comply with [a PSC] order." MCL 460.558.

In the instant case, the PSC determined that Cherryland's understanding of the PSC's July 22, 2004, order was not unreasonable, and, therefore, Cherryland did not "wilfully or knowingly" fail or neglect to obey or comply with this order. In its July 22, 2004, order, the PSC ordered Cherryland to charge Great Wolf Lodge the large resort service (LRS) rate. Four months later, Cherryland began to charge Great Wolf Lodge the higher large commercial and industrial (LCI) rate. According to Cherryland, it did this because Great Wolf Lodge was not satisfying the 1,500-kilowatt minimum monthly load requirement that must be met for the LRS rate to be charged. The PSC explained that when it ordered Cherryland to charge the LRS rate, it assumed that Great Wolf Lodge was in compliance, and would remain in compliance, with the terms and conditions of the LRS rate, and therefore it did not address what Cherryland should do if Great Wolf

14

Lodge failed to comply with the load requirement for the LRS rate. The PSC concluded that, although "Cherryland should have sought clarification of the July 22 order," "Cherryland's interpretation of the July 22 order was not so clearly unreasonable as to justify the imposition of a fine . . . ." In other words, because Cherryland reasonably believed that the PSC's July 22, 2004, order did not preclude it from charging Great Wolf Lodge the LCI rate if Great Wolf Lodge was not complying with the load requirement for the LRS rate, it did not "wilfully or knowingly fail[] or neglect[] to obey or comply with such order." See MCL 460.558. Accordingly, Great Wolf Lodge has not satisfied its burden of showing by clear and satisfactory evidence that the PSC's decision to not impose a fine was unlawful or unreasonable. MCL 462.26(8).

## III. CONCLUSION

Once all the buildings on the property had been demolished, Cherryland no longer had any "customer" on the property, and, therefore, its right to provide electric service to the property was extinguished. Because no rule, statute, or caselaw requires the PSC to impose interest on refunds, the PSC was not required to impose interest on the refund at issue. Finally, because Cherryland did not "willfully or knowingly fail[] or neglect[] to obey or comply with [the PSC's July 22, 2004] order," MCL 460.558, the PSC was not required to impose a fine on Cherryland. Accordingly, I would reverse the Court of Appeals' judgment regarding the imposition of interest and a fine, vacate the remainder of the Court of Appeals' decision, and remand to the trial court for it to address Great Wolf Lodge's argument that it should not now be considered a Cherryland "customer,"

15

even though Cherryland is currently serving Great Wolf Lodge, because Cherryland had coerced Great Wolf Lodge into becoming its "customer."

Stephen J. Markman
Diane M. Hathaway
Brian K. Zahra